# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID M. JOHNSON, )
)
    Plaintiff, )
)
v. )
)   No. 14 C 7858
GREAT WEST CASUALTY )
COMPANY, TANYA JENSEN, )   Judge John J. Tharp, Jr.
BLANE J. BRUMMOND, and )
UNKNOWN DEFENDANTS, )
)
    Defendants. )
)

## MEMORANDUM OPINION AND ORDER

In this lawsuit, the plaintiff, David M. Johnson, sets forth a variety of federal and state law claims arising from a contested workers' compensation proceeding. Pending before the Court is the defendants' Motion to Dismiss (Dkt. 14) under Fed. R. Civ. P. 12(b). Concluding that the plaintiff's state law claims are subject to the exclusivity provisions of the Illinois Workers' Compensation Act ("IWCA") and that the complaint fails to state a plausible federal claim, the motion to dismiss is granted in its entirety.

## BACKGROUND[1]

Although the product of evident fervor, the prolix complaint in this case, which runs 37 pages and 148 paragraphs, is difficult to decipher, due largely to its frequently unnecessary and

---

[1] On a motion to dismiss, all well-pleaded facts in the complaint are taken as true, with all reasonable inferences made in favor of the plaintiff. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). Those factual allegations are supplemented here by two documents that Johnson included with his pleadings: (1) The Record of Proceedings before the Ohio Industrial Commission regarding Claim Number 13-869294, dated August 13, 2014, of which Johnson asked the Court to take judicial notice (*see* Dkt. 23); and (2) a letter from Great West to an employee of the Illinois Department of Insurance, summarizing some of the procedural history of Johnson's workers' compensation claims, which Johnson attached to his response brief, Dkt. 25, Ex. A.

inappropriate use of legal jargon, omission of important facts, and disdain for basic punctuation. The gist of the complaint, however, can be discerned notwithstanding these impediments. In brief, Johnson claims that he was injured on May 3, 2013, while driving for his employer, Melton Truck Lines, in Alabama. Melton subsequently terminated Johnson's employment on or about June 13, 2013. Thereafter, Johnson filed a workers' compensation claim with Defendant Great West Casualty Company ("Great West"), Melton's workers' compensation insurer.

There are, it seems, a number of states in which Johnson might be able to pursue a workers' compensation claim, including: (1) Alabama, where the alleged injury occurred; (2) Oklahoma, where Melton maintains its principal place of business and where Johnson was supervised; (3) Ohio, where Johnson received his initial orientation; and (4) Illinois, where Johnson resided during the relevant time period, where Melton recruited him for employment, and where his commercial driver's license was issued. Johnson also alleges that he accepted Melton's offer of employment in Illinois, and that accordingly his employment contract should be deemed to have been made in Illinois.

Eschewing a claim in either Alabama or Oklahoma, which are reported to offer some of the lowest workers' compensation rates in the country,[2] Johnson first filed a workers' compensation claim against Melton in Illinois on July 5, 2013. That claim remains pending.[3]

---

[2] *See* http://projects.propublica.org/graphics/workers-compensation-benefits-by-limb (last visited August 11, 2015) (reporting, for example, comparative workers' compensation values for the complete loss of a hand of $279,167 (Illinois, ranked 4th among states); $150,850 (Ohio, ranked 23rd); $71,060 (Oklahoma, ranked 46th); and $37,400 (Alabama, ranked last).

[3] *See* http://neonwebk.cmcf.state.il.us/iic/icdw (last visited August 11, 2015). The Court takes judicial notice of the pendency of this public proceeding. *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015) ("As a general rule, we may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6).").

Defending Melton in that proceeding, Great West took the position that the Illinois Workers' Compensation Commission ("IWCC") did not have jurisdiction over Johnson's claim because he was not hired until he had completed his orientation training and other administrative prerequisites in Ohio. Perhaps for this reason (though the complaint does not say), Johnson brought a claim before the Ohio Bureau of Workers' Compensation ("OBWC") on June 3, 2014. That claim was quickly denied, and the denial by the OBWC, which concluded that there were not sufficient contacts with the state to support jurisdiction, was affirmed on review by a hearing officer of the Ohio Industrial Commission on August 13, 2014.

Great West's opposition to Johnson's Illinois and Ohio claims appears to be the root of this lawsuit.[4] Johnson contends that Great West defended against these workers' compensation claims by making "patently false" misrepresentations about which state's workers' compensation agency had jurisdiction over the claim, and which state's law governed the rules of decision in the workers' compensation proceedings.[5] Compl., Dkt. 1 ¶ 46. Johnson alleges that the actions of Great West, Jensen, and Brummond in contesting his workers' compensation claim give rise to claims under the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, as well

---

[4] This case is actually the second of three cases filed in this District arising from this dispute. The first was a putative class action filed against both Great West and Melton, which this Court dismissed because pro se litigants may not bring claims on behalf of a class. *See Johnson v. Melton Truck Lines, Inc.*, No. 14 C 4294, Dkt. 6 (N.D. Ill. July 23, 2014). Johnson then voluntarily dismissed the first case and re-filed similar, but individual, claims in this case against Great West and in another case against Melton. The Melton case was dismissed based on Johnson's failure to complete a financial affidavit. *See Johnson v. Melton Truck Lines, Inc.*, No. 14 C 8817, Dkt. 6 (N.D. Ill. Nov. 10, 2014) (Dow, J.).

[5] Contrary to Great West's contention, the Illinois rule prohibiting direct actions against insurance carriers based on the negligence of the insured does not apply in the context of workers' compensation claims. Section 4(g) of the Illinois Workers' Compensation Act permits a claimant to pursue an action against an employer's insurance carrier where the employer has refused to pay workers' compensation benefits. 820 ILCS 305/4(g). The action may be filed against the employer and the carrier jointly or separately. *McAnally v. Butzinger Builders*, 263 Ill. App. 3d 504, 509-10, 636 N.E.2d 19, 23 (1994).

3

as state law claims under the Illinois Consumer Fraud Act, Bad Faith, two counts of Negligent Misrepresentation, Tortious Interference with Contract, Tortious Interference with Prospective Economic Advantage, Intentional Infliction of Emotional Distress, and Civil Conspiracy.[6] The defendants have filed a motion to dismiss, arguing that Johnson has not stated a claim entitling him to any relief from this Court.[7]

## DISCUSSION

Although it sets forth eight "counts," there is a single premise to the complaint: Johnson maintains that he has been harmed by false statements and invalid arguments made by Great West in opposing his workers' compensation claim. In advancing this premise, Johnson betrays a misunderstanding of an adversarial system of dispute resolution. As Great West notes in its reply brief, it is "the essential role of a court or tribunal to assess the claims and defenses brought before it and to evaluate and discipline, as appropriate, supposedly vexatious, unreasonable or sanctionable positions taken." Reply, Dkt. 26, at 1. And under Illinois law,[8] the exclusive remedy for "unreasonable or vexatious" efforts to avoid and delay payment of workers' compensation benefits is an award of additional compensation under the IWCA. 820 ILCS 305/19(k). The arguments Johnson raises, then, are the province of the IWCC, not a federal court.

---

[6] Johnson also alleges that the defendants have violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, but he acknowledges that he has not yet received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"), which is a prerequisite to filing suit under the ADA. *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e–5(f)(1); *see also Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000) (*citing Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). Accordingly, Johnson has not presently asserted an ADA claim. Compl., Dkt. 1 ¶ 15.

[7] Johnson's complaint adequately pleads the existence of diversity jurisdiction (*see* Compl., Dkt. 1 ¶¶ 4-5); the state law claims are therefore properly considered as they are not based only on supplemental jurisdiction.

[8] The parties appear to agree that Illinois law governs the non-federal claims asserted in the complaint.

### A. Claims Arising From Great West's Conduct in Defending Johnson's Workers' Compensation Claim

The Illinois' Workers' Compensation Act displaces any "common law or statutory right to recover damages from [one's] employer [or] his insurer . . . for injury or death sustained by any employee while engaged in the line of his duty as such employee." 820 ILCS 305/5(a).[9] For these types of accidental on-the-job injuries, the workers' compensation procedure provides the only way to recover. The IWCA exclusivity provision also bars tort claims arising out of vexatious or malicious conduct in delaying workers' compensation claims. *See Robertson v. Travelers Ins. Co.*, 95 Ill. 2d 441, 448-49, 448 N.E.2d 866, 869-70 (1983) (holding that this exclusivity provision bars common law actions for bad faith or intentional infliction of emotional distress in delaying a workers' compensation claim).

Claims alleging an insurer's bad faith or vexatious delay in the processing or defense of a workers' compensation claim are covered under IWCA section 19(k), which allows claimants to recover additional compensation equal to 50% of the amounts due, as well as a daily penalty for the delay. *See* 820 ILCS 305/19(k); *see also* 820 ILCS 305/19(*l*) (providing for additional compensation where "the employer or his insurance carrier shall without good and just cause fail, neglect, refuse or unreasonably delay the payment of weekly compensation benefits"). Because the IWCA's statutory scheme already anticipates that this type of dispute may occur in workers' compensation proceedings, and provides a venue for litigating against an insurer's or an employer's use of bad faith, frivolous defenses to workers' compensation claims, the exclusivity provision prevents the courts from hearing these types of claims. *Robertson*, 95 Ill. 2d at 450, 448 N.E.2d at 871 (holding that any claim that is essentially a claim for vexatious delay through

---

[9] In his complaint, Johnson refers to "the Act" without ever expressly identifying the statute to which he is referring; comparing his quotations from "the Act" to the IWCA, however, it is apparent that "the Act" is the IWCA.

"unorthodox and perhaps even outrageous conduct" by the insurer must be pursued within the workers' compensation proceeding itself).

Johnson's allegations supporting his claims for bad faith, negligent misrepresentation, and intentional infliction of emotional distress assert that Great West engaged in improper conduct to enable it to delay and defeat his workers' compensation claim. As such, they clearly fall within the claims that are subject to the IWCA's exclusivity provisions.[10] Johnson maintains that *Robertson* applies only to the tort of bad faith failure to pay a claim, Resp., Dkt. 24, at 8, but that is not so. In *Robertson*, the plaintiff sought to recover, in a common law action, damages on the basis that an insurer handled his workers' compensation claim in a "maliciously deceptive" manner, which allegedly resulted in severe emotional distress. 95 Ill. 2d at 446, 448 N.E.2d at 869. Such claims, the Illinois Supreme Court held, are the exclusive province of the IWCA. *Id*. at 450. Johnson's claims, like those in *Robertson*, are that Great West has been "maliciously deceptive" in opposing his claim, and his claims are therefore also subject to IWCA's exclusivity provision. Moreover, nothing in *Robertson* suggests that the scope of that provision is limited to "bad faith" claims; to the contrary, the Illinois Supreme Court held that the exclusivity provisions of the IWCA should be interpreted broadly, holding that "a common law action should not, without other evidence of legislative intent be held to survive the Act's exclusivity provisions merely because the remedy provided in the Act for the injury alleged applies to other kinds of injuries as well." *Id.* at 447*; see also Perfection Carpet v. State Farm Fire & Cas. Co*., 259 Ill. App. 3d 21, 32, 630 N.E.2d 1152, 1156 (1994).

---

[10] Great West has not asserted the absolute litigation privilege as a defense to any of the alleged false statements made during the course of the workers' compensation proceedings, so the Court has no occasion to consider the applicability of that doctrine here.

It is perhaps not as pellucid that Johnson's tortious interference claims are subject to the IWCA's exclusivity provisions. The focus of those claims is the alleged disruption of Johnson's employment relationships, present and future, rather than the denial of his workers' compensation claim. But this seeming distinction is illusory, because Johnson alleges that Great West's means for disrupting his employment relationships was to oppose his workers' compensation claim, thereby "depriving . . . Plaintiff of medical treatment for the disability" he incurred as a result of his alleged injury. Compl., Dkt. 1 ¶ 123; see also *id*. ¶ 131 (The defendants "deliberately, and tortuously interfered with the economic relationship by . . . failing to provide medical treatment for Plaintiff's disability under the insurance policy thus exacerbating the injury."). Thus, these claims, too, are based on claims that the defendants vexatiously opposed and delayed Johnson's receipt of workers' compensation benefits, and so are also subject to IWCA's exclusivity provision.

Accordingly, the Court dismisses Johnson's claims for bad faith (Count II), negligent misrepresentation (Counts III and IV), tortious interference (Counts V and VI), and intentional infliction of emotional distress (Count VII).

**B.     Tortious Interference (Counts V and VI)**

Even if Johnson's tortious interference claims were not subject to IWCA's exclusivity provisions, they would still fail. Both tortious interference claims require Johnson to prove that the defendants induced a breach or termination of a contract or some reasonable expectancy of future economic benefit. Under Illinois law, in order to state a claim for tortious interference with contract, a plaintiff must plead "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages." *Dopkeen v. Whitaker*,

399 Ill. App. 3d 682, 684, 926 N.E.2d 794, 797 (2010) (*quoting Complete Conference Coordinators, Inc. v. Kumon N. Am., Inc.*, 394 Ill. App. 3d 105, 109, 915 N.E.2d 88, 93 (2009)). Similarly, to state a claim for tortious interference with prospective economic advantage, a plaintiff must allege "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014). Therefore, Johnson must identify a contractual or other basis for expecting continued employment with Melton even after the injury. Further, Johnson must allege that Great West and its employees engaged in "intentional and unjustified" conduct that caused his employment with Melton to end.

The complaint fails to allege a breach of contract or frustration of Johnson's expectations because it gives no facts at all that support a reasonable expectancy of continued employment with Melton after his injury. Under Illinois law, employment contracts are terminable at-will, unless the contract provides otherwise. *See, e.g.*, *McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 485, 680 N.E.2d 1347, 1349 (1997). Nowhere in the complaint does Johnson allege that his employment contract provided for a specific term of employment past June 2013 or that it provided a reasonable basis to believe that his employment would continue past that point. Nor has Johnson plausibly alleged a reasonable expectancy of employment with any unspecified "future employer." *See* Compl., Dkt. 1 ¶¶ 120-24, 128-30. Accordingly, both tortious interference claims fail. *See Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005) (rejecting both tortious interference with contract and with business expectancy claims where plaintiff was an at-will employee).

Nor does the complaint allege any facts supporting a causal relationship between Great West's alleged interference and Johnson's loss of employment. Johnson accuses Great West of causing Johnson to have "lost the benefits of insurance" and "lost the medical expenses for his disability" through its conduct in defending against the workers' compensation claim. Compl., Dkt. 1 ¶ 133. But Johnson does not allege any facts surrounding his termination, so it provides no basis to infer that Great West's actions caused Johnson's termination in any way. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Illustrating this problem, the Court notes that the complaint's allegations of dishonesty, fraud, and misrepresentation by Great West span a period running from July 5, 2013, through September 2014—but Johnson was terminated on June 12, 2013, *before* Great West is alleged to have done anything at all with respect to his workers' compensation claim. *See, e.g.*, Compl., Dkt. 1 ¶¶ 35-36 ("On or about July 5, 2013"); ¶ 40 ("On or about February 5, 2014"); ¶ 41 ("On or about May 5, 2014"); ¶¶ 46-49 ("On or about September 10, 2014"). The complaint therefore fails to plausibly suggest a causal link between Great West's conduct in the workers' compensation proceeding and Johnson's termination.

Thus, even if Johnson's tortious interference claims were not barred by IWCA's exclusivity provision, the claims fail because the complaint does not allege sufficient grounds for reasonably expecting continued employment or a causal relationship between Great West's actions and Johnson's termination.

### C. Illinois Consumer Fraud and Deceptive Business Practices Act

In Count I, Johnson alleges that Great West's actions constitute fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* To bring an ICFA claim, a plaintiff must allege that he is a "consumer" as defined by the ICFA. *Steinberg v. Chi. Med. Sch.*, 69 Ill. 2d 320, 328, 371 N.E.2d 634, 638 (1977). The Illinois courts

9

have consistently held that although insurance is a "service" covered under the IFCA, the definition of "consumer" cannot be read to cover a plaintiff who sues the insurer of an adverse party. *See, e.g.*, *Carlsson v. Am. Family Ins. Co.*, 2011 IL App (1st) 102916-U, ¶ 34 ("Here, [the plaintiff] is not an insured of the policy issued by [the defendant] and thus, could not qualify as a 'consumer' within the meaning of the statute."); *McCarter v. State Farm Mut. Auto. Ins. Co.*, 130 Ill. App. 3d 97, 101, 473 N.E.2d 1015, 1018 (1985) ("[T]he transaction complained of in the present case does not involve a sale of insurance. In fact, the plaintiff is not even a consumer under these circumstances."). Johnson does not have a consumer relationship with Great West or its employees, but rather is a third party claimant whose interests are "purely adversarial" with Great West. *Carlsson*, 2011 IL App (1st) 102916-U, ¶ 34. Therefore, Johnson cannot bring an ICFA claim against Great West, and accordingly, the ICFA count (Count I) must be dismissed.

**D. RICO**

Although the theory is not set out in a distinct "count,"[11] Johnson also alleges that the defendants' actions have violated RICO through both 18 U.S.C. § 1962(c) and § 1962(d). A § 1962(c) violation has four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (footnote omitted). Section 1962(d) makes a conspiracy to violate § 1962(c) unlawful as well.

---

[11] The defendants seem to believe that Count VIII, which is denominated "Civil Conspiracy," sets forth Johnson's RICO claim, but that count does not appear to invoke RICO. As a civil conspiracy claim, Count VIII fails because, to the extent that it is founded upon conduct that is subject to the IWCA exclusivity provisions, it, too, is subject to that provision; to the extent that it is predicated upon ICFA, it also fails because the complaint "fails to state an independent cause of action underlying the conspiracy allegations." *Illinois State Bar Ass'n Mut. Ins. Co. v. Cavenagh*, 2012 IL App (1st) 111810, ¶ 37, 983 N.E.2d 468, 481 (internal punctuation omitted).

To the extent that he intends to target Great West with his RICO claim, Johnson misses the mark because he alleges that Great West is the RICO "enterprise." Compl., Dkt. 1 ¶ 74. Put simply, a RICO enterprise cannot be a RICO defendant; the defendant must conduct the affairs of the enterprise, meaning it must be distinct from the enterprise. *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853-54 (7th Cir. 2013) ("Section 1962(c) requires a plaintiff to identify a 'person'—*i.e.*, the defendant—that is distinct from the RICO enterprise."); *Baker v. IBP, Inc.,* 357 F.3d 685, 692 (7th Cir. 2004) ("Without a difference between the defendant and the 'enterprise' there can be no violation of RICO.").

Employees of an enterprise, however, can of course be "persons" who conduct the affairs of the enterprise and can therefore be RICO defendants. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (An employee "is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that."). Defendants Jensen and Brummond could potentially be viable RICO defendants—but for the fact that the complaint fails to allege that they conducted the affairs of the enterprise through "a pattern of racketeering activity."

To allege "a pattern of racketeering activity," a plaintiff must allege "at least two acts of racketeering activity" within a 10-year period, and usually more will be required. 18 U.S.C. § 1961(5); *see also H.J. Inc. v. Nw. Bell. Tel. Co.*, 492 U.S. 229, 232 (1989). For RICO claims predicated on acts of mail or wire fraud, the plaintiff must allege the fraudulent communications with particularity. Fed. R. Civ. P. 9(b); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994). Further, a plaintiff "must show that the racketeering predicates are related, and that

they amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239. The continuity prong looks to duration, the number of victims, number of schemes, and number of injuries. *See Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986).

There is no "pattern of racketeering activity" here. Even read liberally, what the complaint alleges is an ongoing effort by Great West to contest Johnson's claim to workers' compensation benefits in Illinois. The complaint provides no basis to characterize Great West's legal arguments as fraudulent, but even if it did, it would still describe only a single scheme, targeting a single victim, and causing a single injury. As the scheme's sole victim, Johnson cannot plausibly allege that Brummond and Jensen conducted Great West's affairs through a pattern of racketeering activity. *See Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 475 (7th Cir. 2007) ("[N]otwithstanding [the plaintiff's] efforts to allege a vast array of victims and injuries, he is the only identifiable victim."). Johnson cannot recast what is (at most) a single fraudulent scheme into a "pattern" by pointing to multiple mailings or wire transmissions in furtherance of a single fraudulent scheme. *See, e.g.*, *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) ("[W]e do not look favorably on many instances of mail and wire fraud to form a pattern."); *U.S. Textiles, Inc. v. Anheuser-Busch Cos., Inc.*, 911 F.2d 1261, 1268 (7th Cir. 1990) ("Mail fraud and wire fraud are perhaps unique among the various sorts of 'racketeering activity' possible under RICO in that the existence of a multiplicity of predicate acts . . . may be no indication of the requisite continuity of the underlying fraudulent activity."). And here, in any event, there are not even a substantial number of such communications. When all factors are considered, there is no "continuity" in the predicate acts alleged, so Johnson fails to satisfy the § 1962 "pattern" requirement.

The foregoing are technical reasons that the RICO claim fails, but it is worth noting as well that what Johnson seeks to characterize as racketeering activity is, in fact, a garden variety workers' compensation claim. As the Seventh Circuit explained in *Jennings*, given the statute's potential breadth, a civil RICO claim must be evaluated "with the goal of achieving a natural and commonsense result, consistent with Congress's concern with long-term criminal conduct." 495 F.3d at 473 (internal quotation marks omitted). One need not wade deeply into the intricacies of RICO law to understand that when Congress created a private civil right of action to enforce RICO, it did not intend for ordinary workers' compensation proceedings to be subject to RICO claims. Judge (now Chief Judge) Diane Wood's commonsense assessment in *Jennings*, a case similarly involving adversaries in an administrative proceedings, is equally apt in this case:

> Even if the defendants may have used misleading tactics in their various efforts to [prevail in the dispute] (a point on which we take no position), the case lacks any of the hallmarks of a RICO violation. There is no pattern of fraudulent or racketeering behavior. The [Commission has] ample tools to correct any individual instances of fraud or other misconduct.

*Id*. To the extent that Johnson takes issues with the defenses raised by Great West in his workers' compensation proceeding, those are issues that should be addressed in that proceeding, not in a separate federal lawsuit alleging violation of anti-racketeering laws.

\*     \*     \*

For the foregoing reasons, the Court grants the defendants' Motion to Dismiss (Dkt. 14), and dismisses the complaint without prejudice.

Dated: August 11, 2015

/s/ John J. Tharp, Jr.
John J. Tharp, Jr.
United States District Judge