**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DAVID M. JOHNSON,<br><br>   Plaintiff,<br><br>   v.<br><br>MELTON TRUCK LINES, INC.,<br>ROBERT A. PETERSON, MICHAEL<br>DARGEL, RAMONA WILLIAMS,<br>MELTON TRUCK LINES, INC.<br>OCCUPATIONAL INJURY BENEFIT<br>PLAN, ROBERT ROGAN, GREAT<br>WEST CASUALTY COMPANY,<br>TANYA JENSEN, BLANE J.<br>BRUMMOND, and UNKNOWN<br>DEFENDANTS,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. 14 C 07858<br><br> Judge John J. Tharp, Jr. |

## <u>MEMORANDUM OPINION AND ORDER</u>

The plaintiff, David M. Johnson, has filed suit against his former employer, Melton

Truck Lines, Inc. ("Melton"), a number of individuals associated with Melton—Robert Peterson,

Michael Dargel, Ramona Williams, and Robert Ragan,[1] Melton Truck Lines, Inc. Occupational

Injury Benefit Plan ("the Plan") (collectively with Melton and the individual defendants, the

"Melton defendants"), Melton's insurer Great West Casualty Company ("Great West"), and

individuals associated with Great West—Tanya Jensen and Blane Brummond (collectively, the

"Great West defendants"). Johnson asserts a variety of federal and state claims, including

violations of the Fair Labor Standards Act ("FLSA"), the Lanham Act, the Employee Retirement

Income Security Act ("ERISA"), the Americans with Disabilities Act ("ADA"), invasion of

privacy, breach of contract, wrongful termination, and retaliation, among others. *See* Sec. Am.

---

[1] Melton notes that the complaint misspells Robert Ragan as "Rogan." Melton Mem. in
Supp. 1, ECF No. 157.

Compl. ("SAC"), ECF No. 103. Pending before the Court are the Great West defendants' motion to dismiss, ECF No. 117, and motion for sanctions against Johnson, ECF No. 132, the Melton defendants' motion to dismiss, ECF No. 156, and Johnson's motion for sanctions against Great West, ECF No. 137. For the following reasons, the motions to dismiss are granted in part and denied in part and the sanctions motions are denied.

## BACKGROUND[2]

Johnson's Second Amended Complaint is no less prolix than his original complaint; in fact, Johnson has expanded his allegations in the SAC, which runs to 48 pages and 265 paragraphs. As in his original complaint, the SAC is replete with misused legal jargon and omits many facts necessary to the formation of a coherent narrative. The Opinion granting Great West's motion to dismiss the original Complaint explains some of the background between the parties. *See Johnson v. Great W. Cas. Co.*, No. 14 C 7858, 2015 WL 4751128, at *1-2 (N.D. Ill. Aug. 11, 2015).[3] To briefly summarize, Johnson claims that he injured his hand on May 3, 2013 while driving for his employer, Melton Truck Lines, in Alabama. Melton subsequently

_____

[2] On a motion to dismiss, all well-pleaded facts in the complaint are taken as true, with all reasonable inferences made in favor of the plaintiff. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). Those factual allegations are supplemented here by two documents that Johnson included with his pleadings: (1) Melton's driver policies, ECF No. 103-1; and (2) a print-out of an online job posting for a Driver Manager position with Melton, ECF No. 103-4.

[3] This case is actually the second of four cases filed in this District arising from this dispute. The first was a putative class action filed against both Great West and Melton, which this Court dismissed because pro se litigants may not bring claims on behalf of a class. *See Johnson v. Melton Truck Lines, Inc.*, No. 14 C 4294, ECF No. 6 (N.D. Ill. July 23, 2014) (Tharp, J.). Johnson then voluntarily dismissed the first case and re-filed similar, but individual, claims in this case against Great West and in another case against Melton. The Melton case was dismissed based on Johnson's failure to complete a financial affidavit. *See Johnson v. Melton Truck Lines, Inc.*, No. 14 C 8817, ECF No. 6 (N.D. Ill. Nov. 10, 2014) (Dow, J.). Johnson filed an additional case against Melton and various government departments and officials (*e.g.*, the Department of Transportation, the Department of Health and Human Services, the Secretary of Labor, etc.), which he voluntarily dismissed. *See Johnson v. United States of America, et al.*, No. 16 C 1934, ECF No. 8 (N.D. Ill. Feb. 18, 2016) (Shah, J.).

terminated Johnson's employment on or about June 12, 2013. Thereafter, Johnson filed a workers' compensation claim in Ohio with Great West, Melton's workers' compensation insurer, which was disallowed for lack of jurisdiction. *See* Pet. Conf. Arb. Award Ex. A, ECF No. 62 (disallowance affirmed on appeal to Ohio Industrial Commission). Johnson also filed a workers' compensation claim in Illinois, which was eventually dismissed for failure to appear.[4] *See* GW Mot. Dismiss 4, ECF No. 117; *see also* Pet. Conf. Arb. Award Ex. B.

The Opinion dismissing the original Complaint advised Johnson that claims premised upon the defendants' opposition to his workers' compensation claim "are the province of the [Illinois Workers Compensation Commission], not a federal court." *Johnson*, 2015 WL 4751128, at *2 ("the exclusive remedy for 'unreasonable or vexatious' efforts to avoid and delay payment of workers' compensation benefits is an award of additional compensation under the [Illinois Workers' Compensation Act]."). Nonetheless, a number of Johnson's new allegations continue to assert liability based on the defendants' opposition to his workers compensation claims. *See* SAC (Counts V-VI, IX-XI, XIV). To these claims against the Great Western defendants, Johnson now asserts claims against the Melton defendants based on his recruitment to, employment with, and termination from, Melton. The defendants have filed motions to dismiss,

---

[4] *See* http://neonwebk.cmcf.state.il.us/iic/icdw, Case No. 13WC021814 (last visited June 28, 2016). The Court takes judicial notice of this public proceeding. *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015) ("As a general rule, we may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6)."). It is not entirely clear from the SAC, but it appears that Johnson may have also filed workers' compensation claims in Alabama and Oklahoma. *See* SAC ¶¶ 64-65 (stating that Melton denied Johnson's "disability claim" in Alabama and Oklahoma); *see also* SAC ¶ 73 (Johnson refers to his workers' compensation claim in Ohio as a "disability claim").

arguing that Johnson has not stated a claim entitling him to any relief from this Court.[5] Both Johnson and the Great West defendants have filed motions for sanctions pursuant to Rule 11.

## DISCUSSION

### I.    Personal Jurisdiction over Individual Melton Defendants

The individual Melton defendants move to dismiss the SAC under Rule 12(b)(2), arguing that Johnson has failed to establish that this Court has personal jurisdiction over them. Melton Mem. in Supp. 2; Melton Reply 2-5, ECF No. 179. A federal court in Illinois may exercise personal jurisdiction over a defendant if the Illinois long-arm statute would allow it. *See* Fed. R. Civ. P. 4(k)(1)(A); *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). Because Illinois' statute contains a catch-all provision that permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state statutory and federal constitutional requirements merge. *Id.*; see 735 Ill. Comp. Stat. 5/2-209(c).

Personal jurisdiction may be "general" or "specific." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014); *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945). General personal jurisdiction exists where the defendant's continuous operations within the forum state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Daimler AG*, 134 S. Ct. at 754 (quoting *Int'l Shoe Co.*, 326 U.S. at 318). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011).

---

[5] Johnson adequately pleads the existence of diversity jurisdiction (*see* SAC ¶¶ 2-3, 7-17); the state law claims are therefore properly considered as they are not based only on supplemental jurisdiction.

Specific personal jurisdiction exists when the plaintiff's claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the forum state. *uBID, Inc.*, 623 F.3d at 425; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). "The key question is therefore whether the defendant [has] sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo v. Dworkin*, 601 F.3d 693, 700-701 (7th Cir. 2010), citing *Int'l Shoe Co.*, 326 U.S. at 316. Specific jurisdiction requires that (1) the defendant has purposely directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state, and (2) the alleged injury arises out of the defendant's forum-related activities. *Id.* at 702, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

Given that the defendants have moved to dismiss the SAC for a lack of personal jurisdiction, the burden shifts to Johnson to show that such jurisdiction exists. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Johnson alleges that because defendants Peterson, Williams, and Dargel interacted with him by both phone and email on matters related to Johnson's employment with Melton, both specific and general personal jurisdiction exists. *See, e.g.*, SAC ¶¶ 27, 33, 55, 112-13, 248, 250, 256, 262. As to defendant Ragan, Johnson alleges no facts indicating that Ragan had any contacts with Illinois; instead, the complaint merely describes Ragan as the administrator of Melton's Injury Benefit Plan. *See* SAC ¶¶ 141, 152, 156.

Here, it is apparent that Johnson's allegations have failed to demonstrate that this Court has personal jurisdiction over any of the individual Melton defendants. In order for a court to exercise general jurisdiction over an individual defendant, that defendant must be a citizen of the

forum state or have contacts that are so "continuous and systematic" with the forum state that, for all intents and purposes, they are at home in that state. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). For the purposes of general jurisdiction, individual defendants are considered citizens of the state in which they reside with the intent to remain indefinitely. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (noting that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."). The complaint makes plain that none of the individual Melton defendants are domiciled in Illinois; all three of these defendants reside in Tulsa, Oklahoma and, although residence does not necessarily equate to domicile, no facts are alleged to suggest that with respect to these defendants their residence and domicile are not one and the same. *See* SAC ¶¶ 8-10, 12. Nor does the complaint does not allege any facts indicating that the defendants have "systematic and continuous" contacts with Illinois to the extent required for the exercise of general jurisdiction over a non-citizen defendant. *See Goodyear*, 564 U.S. at 930. Here, the individual Melton defendants' alleged contacts with Illinois are limited to a few phone calls and emails. *See* SAC ¶¶ 18, 33, 112-13. Such limited, infrequent conduct does not warrant a finding of general personal jurisdiction over any of the individual Melton defendants.

Nor do the few phone calls or business solicitation emails establish specific jurisdiction. To establish specific jurisdiction, a plaintiff must show that (1) the defendant purposefully availed himself of the privilege of conducting business in the forum state; (2) the alleged injury must have arisen from the defendant's activities within the forum; and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Here, it is apparent the individual defendants did not purposely avail themselves to the benefits of Illinois; their alleged contacts with Illinois are

limited to Peterson's emails to Johnson advertising Melton, Williams' phone calls to Johnson regarding his scheduling, and Dargel's email regarding Johnson's termination. SAC ¶¶ 18, 33, 112-13. These allegations only connect Peterson, Williams, and Dargel to Johnson, who happens to live in Illinois.[6] And they provide no connection at all between Illinois and Ragan, who merely administered Melton's Personal Benefit Plan. The Seventh Circuit has made clear that "'the plaintiff cannot be the only link between the defendant and the forum.'" *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014)). Thus, the connection between the individual Melton defendants and Johnson is not sufficient to connect those defendants to Illinois for the purposes of specific jurisdiction.

Even if the few interactions Peterson, Williams, and Dargel had were sufficient to establish personal jurisdiction in Illinois, the individual defendants argue that because their alleged interactions with Johnson were on behalf of their employer, they are protected by the fiduciary shield doctrine. Illinois recognizes the fiduciary shield doctrine, which "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." *Fletcher v. Doig*, 125 F. Supp. 3d 697, 716 (N.D. Ill. 2014) (quoting *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 912 (7th Cir. 1994)); *see also ISI Int'l, Inc. v. Borden Ladner Gervais LLP,* 256 F.3d 548, 550 (7th Cir. 2001) ("Illinois employs the fiduciary-shield doctrine . . . under which a person who enters the state

---

[6] Nor do Peterson's alleged emails advertising Melton's position subject him to the jurisdiction of this Court: there is no evidence that Peterson targeted Illinois with the emails. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("The fact that [defendant] maintains an email list to allow it to shower past customers and other subscribers with company-related emails does not show a relation between the company and Indiana. Such a relation would be entirely fortuitous, depending wholly on activities out of the defendant's control.").

solely as fiduciary for another may not be sued in Illinois." (citing *Rollins v. Ellwood*, 565 N.E.2d 1302, 1314 (Ill. 1990)). Here, the individual defendants contacted Johnson on behalf of Melton—thus, because the individual defendants' contacts with an Illinois resident were solely in the interests of their employer and not to serve their personal interests, the defendants are protected by the fiduciary shield doctrine.

Accordingly, the individual Melton defendants' Rule 12(b)(2) motion to dismiss is granted.[7]

## II.    Claim I: Violations of the FLSA, Lanham Act, and Sherman Act

Johnson alleges that Melton did not compensate him for the hours he spent doing tasks other than driving for Melton—such as responding to emails and checking and cleaning his truck—which he asserts is a violation of the FLSA, 29 U.S.C. § 206. He alleges that he worked 70 hours per week, including driving and non-drive time, but was only compensated for the hours he spent driving (although Johnson acknowledges that Melton paid drivers for a number of non-driving activities, including layovers, stop-offs, tarping, and crossing into Canada). *See* SAC ¶¶ 31, 116; Ex. A. Melton argues that the non-drive time portion of Johnson's claim is a request for gap-time payment, which is not recognized under the FLSA. Melton Mem. in Supp. 4 (citing *Brown v. Lululemon Athletica, Inc.*, No. 10 C 05672, 2011 WL 741254, at *4 (N.D. Ill. Feb. 24, 2011) (collecting cases which hold that "the FLSA does not provide a remedy for workers who have received at least the minimum wage for a pay period in which they have not worked

---

[7] Johnson argues that the individual Melton defendants have waived their objection to personal jurisdiction under Federal Rule of Civil Procedure 12(h)(1) because they have appeared and filed responsive pleadings. Resp. to Melton 44-5, ECF No. 174. The defendants were permitted to do so, however, without waiving their objection to personal jurisdiction: "The law has long been clear that a party may appear and litigate both a personal jurisdiction defense and the merits of a case without waiving the personal jurisdiction defense." *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 848 (7th Cir. 2012).

overtime").[8] To determine whether non-compensated time violates the FLSA, the courts that have addressed this question have included gap-time in total hours worked and divided by the employee's weekly compensation to reach an average hourly wage; so long as the average hourly wage exceeds the federal minimum wage, courts have held that the compensation scheme does not violate the FLSA. *See, e.g.*, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 116 (2d Cir. 2013) ("[T]he text of FLSA requires only payment of minimum wages and overtime wages. [citation omitted] It simply does not consider or afford a recovery for gap-time hours."); *Franks v. MKM Oil, Inc.*, No. 10 C 00013, 2012 WL 3903782, at *10 n.9 (N.D. Ill. Sept. 7, 2012) ("'[G]ap time'—'time that is not covered by the overtime provisions because it does not exceed the overtime limit, and . . . time that is not covered by the minimum wage provisions because, even though the work is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked,' *Adair v. City of Kirkland,* 185 F.3d 1055, 1062 n. 6 (9th Cir. 1999), is not covered by the FLSA."). Thus, this Court follows the weight of authority and agrees that Johnson cannot state a pure gap-time claim under the FLSA.[9]

As to his minimum wage claim, Johnson specifies four weeks where his total compensation divided by the 70 hours he claims to have worked in those weeks fell below the federal minimum wage of $7.25 per hour, in violation of the FLSA. SAC ¶ 118. Johnson lists his compensation for six specific weeks in the SAC; in two of those six examples, however, his total compensation divided by the 70 hours he claims to have worked is above the federal minimum

---

[8] Johnson does not make a claim for overtime wages under the FLSA, nor could he as motor carriers are exempt from the FLSA overtime provisions. 29 U.S.C. § 213(b)(1).

[9] Johnson's contentions that failure to pay for non-drive time violates the Sherman Antitrust Act and the Clayton Act are frivolous. *See* SAC ¶¶ 125, 127. That Melton did not pay drivers for non-drive time in no way alleges that Melton contracted or conspired "in restraint of trade or commerce" or in any other way violated federal antitrust laws. 15 U.S.C. § 1.

9

wage: "the net earnings of $569.87 for the payroll ending January 21, 2013 equaling $8 per hour [and] . . . the net earnings of $512.73 for the payroll ending March 27, 2013 equaling $[7.32] per hour."[10] SAC ¶ 118. Melton acknowledges that Johnson has stated a FLSA claim for the four weeks Johnson has identified in which his average hourly wage was less $7.25 per hour. Melton Resp. at 4, ECF 157. Accordingly, Melton's motion to dismiss the FLSA claim as to these four weeks is denied.[11]

Johnson also invokes the Lanham Act to attack Melton's compensation; Johnson asserts that Melton's email advertisements that it offered "high pay" to its drivers were false in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1). SAC ¶ 123; *see also* Obj. Melton Mot. Dismiss Ex. ECF No. 163. To invoke the Lanham Act's protections, however, a "plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014). "A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act." *Id.* Because Johnson has not alleged an injury to his commercial interest, his Lanham Act claim must be dismissed.

III.    **Counts II-IV: ERISA claims**

Johnson has alleged that Melton and Great West committed a number of violations of the ERISA, including failure to provide benefits and breaches of fiduciary duty by plan administrators. It is clear from the SAC, however, that Johnson has mistakenly equated Melton's workers' compensation plan with an ERISA plan, but ERISA does not apply to any employee

---

[10] Johnson rounds down his hourly wage for the week ending March 27, 2013 to $7 per hour; however, dividing his total compensation of $512.73 by 70 hours results in an hourly wage of $7.32, which exceeds the federal minimum wage.

[11] The SAC does not allege that these weeks are only illustrative; they are the only weeks as to which a claim of payment of less than the federal minimum wage has been made.

benefit plan "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws." 29 U.S.C. § 1003. Johnson quotes at length from Melton's Injury Benefit Plan (none of the parties have attached any benefit plan documents), which provides various accident compensation rates for injured employees. *See* SAC ¶ 131. Johnson identifies the plan as policy number WC21114I, which is an insurance policy under the Illinois Workers' Compensation Act.[12] SAC ¶ 48. Johnson's confusion is further evidenced by his explanation that he exhausted the alleged "ERISA" plan's administrative appeals process via the workers' compensation proceedings in Ohio. SAC ¶ 135; *see also* SAC ¶ 150 ("the Plan defined Employee by reference to the ***IWCA***, which purportedly excluded Plaintiff because the contract for hire allegedly occurred in Ohio." (emphasis added)). Johnson has not identified an employee benefit plan apart from the workers' compensation plan, under which he is entitled to benefits. Accordingly, his claims alleging violations of ERISA are dismissed.[13]

IV.     **Counts V-VIII: ADA Claims and Illinois Human Rights Act Claim**

Johnson's ADA claims can be grouped into two theories: discrimination in benefits and failure to accommodate. To bring an ADA claim, a plaintiff must timely file a charge with the EEOC, receive a right-to-sue letter, and assert claims within the scope of the charge filed with the EEOC. *See* 42 U.S.C. § 2000e-5; *see also Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) ("the ADA's enforcement provision expressly incorporates § 2000e–5 of Title VII"). Johnson asserts that he filed a charge with the EEOC against Melton and received a

---

[12] *See* http://www.iwcc.il.gov/insurance.htm, Policy No. WC21114I (last visited June 30, 2016). The Court takes judicial notice of this public record. *Olson*, 784 F.3d at 1097 n.1.

[13] To the extent that the ERISA claims are premised upon the defendants' opposition to Johnson's workers' compensation claims, *see, e.g.*, SAC ¶¶ 136-37, 153-54, they must be dismissed for the same reasons explained in the Opinion dismissing his original Complaint. *See Johnson*, 2015 WL 4751128, at *2-4.

notice of right-to-sue on October 28, 2015. SAC ¶ 6. The Melton defendants argue that, because Johnson has not attached the notice of right-to-sue, he cannot establish that he has exhausted his administrative remedies and, therefore, his ADA claims must be dismissed. Not necessarily; failure to attach the notice of right-to-sue is not fatal to an ADA claim. *See, e.g.*, *Krause v. Turnberry Country Club*, 571 F. Supp. 2d 851, 859 (N.D. Ill. 2008) ("'Although Title VII requires that a claimant be notified of her right-to-sue before filing a complaint, it does not state any requirement that a plaintiff attach the right-to-sue letter to her complaint.'" (quoting *Raymond v. City of Chicago*, 183 F.Supp.2d 1060, 1066 n.3 (N.D. Ill. 2002)). Johnson filed the SAC (in which he first alleged the ADA claims) on November 5, 2015, well within the 90-day window after he alleges that he received the notice of right-to-sue, as required under 42 U.S.C. § 2000e-5(f)(1).[14] However, Johnson expressly states (SAC ¶ 6) that the EEOC charge was only directed to defendant Melton (not against Great West, Jensen, Brummond, or the individual Melton defendants), so claims against defendants other than Melton (*see* SAC ¶ 174-75) are outside the scope of the EEOC claim and are therefore dismissed for failure to exhaust. *See, e.g., Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202-03 (7th Cir. 1996) (dismissing claim for failure to exhaust where "the [EEOC] charges implicate different individuals" than the complaint).

In any event, even assuming Johnson's claims to be within the scope of his EEOC charge, his ADA claims must be dismissed.[15] His discrimination claims are based on the denial

---

[14] Johnson does not, however, allege that he received authorization from the Illinois Department of Human Rights to sue under the Illinois Human Rights Act ("IHRA"). Although Johnson states that he received a notice of right-to-sue from the EEOC, "a right to sue letter from the EEOC does not serve as a substitute for a final order from the IDHR." *Egan v. Huntington Copper Moody & Maguire, Inc.*, No. 12 C 9034, 2015 WL 1396187, at *3 (N.D. Ill. Mar. 24, 2015) (citation omitted); *see also* 775 Ill. Comp. Stat. 5/7A-102(A-1)(1)-(3) (IDHR may issue order adopting EEOC's determination).

[15] The same reasoning applies to his claims under the IHRA. *See Zaderaka v. Ill. Human Rights Comm'n*, 131 Ill.2d 172, 545 N.E.2d 684, 687 (1989) (age discrimination claims under the

of his workers' compensation claims: "Defendants . . . [have] excluded Plaintiff from the Group policy and denied him the opportunity to participate in the plan . . . provided by the Defendant Great West only after Plaintiff became disabled on May 3, 2013." SAC ¶ 174. While it is true that Johnson's workers' compensation claim was denied after he fell and injured his hand on May 3, 2013, the public records clearly indicate that Johnson's claims were not denied ***because of*** his injury but rather because he did not have sufficient connections to the state (the Ohio claim) or because he failed to appear and prosecute the proceedings (the Illinois claim). Johnson's argument is the equivalent of saying he was denied disability benefits because he is disabled. The workers' compensation policy, however, exists for the benefit of workers who have been injured, and Johnson acknowledges that Melton's plan provides benefits to injured workers. SAC ¶ 39 ("Defendant Melton provides Defendants Peterson, Dargel, Rogan, and Williams with benefits in the event they are injured due to a work-related accident or injury."). This is not an instance where an employer crafted its benefits to exclude disabled employees. *See, e.g.*, *Piquard v. City of E. Peoria*, 887 F. Supp. 1106, 1114 (C.D. Ill. 1995) ("Plaintiffs allege that the Board, in determining who may participate in the Fund, uses eligibility criteria and methods of administration which discriminate against qualified individuals with disabilities."). Moreover, none of the defendants were the decision makers on either claim; state administrators were responsible for the dismissal of Johnson's respective workers' compensation claims. As to any argument that Great West or any of the defendants effectively "excluded" Johnson from the plan by opposing his claims, this Court has explained that "the exclusive remedy for 'unreasonable or vexatious' efforts to avoid and delay payment of workers'

---

IHRA should be analyzed in the same way as ADEA claims); *Luckett v. Human Rights Comm'n*, 210 Ill. App. 3d 169, 569 N.E.2d 6, 14 (1989) ("When analyzing claims of discrimination under the [IHRA], Illinois courts have looked to the standards applicable to analogous federal claims.").

compensation benefits is an award of additional compensation under the IWCA." *Johnson*, 2015 WL 4751128, at *2 (citing 820 Ill. Comp. Stat. 305/19(k)).

Johnson's failure to accommodate claim also suffers from a number of fatal flaws. To state a claim for failure to accommodate, a plaintiff must show: 1) that he is a qualified individual with a disability; 2) that the defendant was aware of his disability; and 3) that the defendant failed to reasonably accommodate his disability. *E.E.O.C. v. AutoZone, Inc.*, 809 F.3d 916, 919 (7th Cir. 2016). Johnson asserts that, since his fall, his fingers on his left hand "remain[ ] completely frozen" and, as a result, he "is unable to work as the operator of a commercial motor vehicle."[16] SAC ¶¶ 53-54. The Court need not reach the question of whether Johnson has adequately alleged that he is a qualified individual with a disability because he has failed to plead that Melton was aware of his alleged disability at the time of his termination and that he requested any sort of accommodation when he was an employee.

Johnson asserts that he took a leave of absence on June 12, 2013 to visit the doctor for his hand injury and that he was terminated that day "pursuant to [Melton's] new and unannounced leave policy." SAC ¶ 186. There is no allegation that the defendants were aware of Johnson's allegedly disabling condition at the time of his termination (other than his message to Melton on May 5, 2013 that he injured his hand and would be seeking medical treatment at some point, SAC ¶ 51). Although Johnson states that the defendants "have received medical records indicating his inability to carry and lift heavy items," SAC ¶ 187, he had not yet seen a doctor as of June 12, 2013, so Melton could not have received any medical records regarding Johnson's

---

[16] It is difficult to tell due to the inconsistent tenses in which the SAC is drafted whether Johnson is asserting that the impairment to his hand continues to this day: "On June 12, 2013, Plaintiff's fingers to his left hand from the fall on May 3, 2013 remained completely frozen a physical impairment that substantially limited his ability to carry and lift heavy items . . . Johnson is unable to work as the operator of a commercial motor vehicle because he is disabled due to his medical conditions . . . ." SAC ¶¶ 53-54.

alleged impairment at the time of his termination. Johnson's assertion that the defendants "regarded" him as having a substantially limiting impairment—"his present inability to carry and lift a heavy tarp, attach the bungee cords to the tarp, and similar activities with his left hand . . . on June 12, 2013," SAC ¶ 188—is illogical for the same reason; Johnson had not yet seen a doctor, so unless he told Melton of these limitations (which he does not claim to have done, and how could he if he had not yet received a diagnosis?), there is no explanation of how Melton would have known about or considered his alleged disability at the time it terminated his employment.[17]

Nor has Johnson pleaded that he requested any accommodation prior to his termination. Instead, he argues that Melton has failed to provide an accommodation that would permit him to return to work, "including, but not limited to, reassignment to an open position" of driver manager. SAC ¶¶ 191-92. As already established, Johnson has not pleaded facts plausibly establishing that Melton terminated him because of his alleged disability but rather for one of a number of other possible reasons; the ADA does not entitle Johnson to be rehired with an accommodation. *Cf. Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010) ("[A]n employee is not entitled to return to her former position if she would have been fired regardless

---

[17] Johnson does not expressly assert that he was terminated because of his disability, but to the extent that his complaint could be read to assert such a claim, it fails for this reason. Because he has not pled that Melton was aware of his alleged disability at the time of his termination, Johnson fails to establish that his alleged disability factored in any way into Melton's decision to terminate him. *See Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) ("At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee 'because of' a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee 'because of' some other reason."). Moreover, Johnson further undermines any argument that he was terminated because of his alleged disability by stating a number of additional reasons for his termination, including that "[he] had previously complained of unpaid Wages; and [he] had 'stolen' the commercial motor vehicle while en-route home . . . ." SAC ¶ 33.

of [her disability].”); *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 695 (7th Cir. 1998)

(employer has a duty to consider reassigning its disabled employees—not former employees—to

other positions for which they are qualified).[18]

## V.    Counts IX-X: Due Process Claims

Johnson invokes 42 U.S.C. § 1983 in alleging that the denial of his claims under the

workers’ compensation plan violates his due process rights. Section 1983 provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law . . . .

42 U.S.C. § 1983. Section 1983 is a remedy for constitutional violations committed by state

actors. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815-16 (7th

Cir. 2009). Johnson claims that the state actor here is “Illinois Arbitrator Williams,” who

presided over his Illinois workers’ compensation claim and that the defendants acted at the

direction of Arbitrator Williams to deny Johnson benefits under the workers’ compensation

---

[18] Moreover, the position Johnson suggests as a reasonable accommodation is a driver manager, which, as he was previously a driver, is almost certainly a promotion. An employer is not required to promote an employee as an accommodation. *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 699 (7th Cir. 1998). Nor has Johnson demonstrated that he is qualified for this position. *See* SAC Ex. 4 (including in prerequisites for driver manager position a “minimum [of] 2 years dispatch experience or driver relation experience”), ¶ 192 (Johnson’s assertion that he qualified because he “is an actual Driver who has performed the duties as set forth the job description of the position of Driver Manager”); *see also Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2005) (employee requesting accommodation bears burden of showing vacant position exists for which he is qualified). Furthermore, Johnson implies that he is requesting this position in place of two employees currently in the position, “Mr. Floyd” and “Defendant Williams,” *see* SAC ¶ 192, but “an employer has no duty to ‘bump’ an incumbent from a position just to accommodate the request of a disabled employee.” *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 678 (7th Cir. 1998).

plan.[19] SAC ¶¶ 208, 223. As explained *supra*: Johnson's Illinois workers' compensation claim was not denied on the merits but rather for failure to appear; the defendants did not deny Johnson benefits under the plan (that is the role of the "arbitrator") but rather opposed his claim; and "the exclusive remedy for 'unreasonable or vexatious' efforts to avoid and delay payment of workers' compensation benefits is an award of additional compensation under the IWCA." *Johnson*, 2015 WL 4751128, at \*2. Because Johnson has failed to identify a state action that violated his right to due process, his § 1983 claims are dismissed.

## VI.    Count XI: Invasion of Privacy

Johnson asserts that the defendants have used his nonpublic personal information "to facilitate the commercial advantage to Defendants . . . from denying the 'existence' of coverage," in violation of the ADA, the Gramm-Leach-Bliley Act ("GLBA"), and Illinois law. SAC ¶ 236. Like the majority of his claims, this, too, is rooted in the defendants' participation in the workers' compensation proceedings: Johnson asserts that Melton shared his personal information, such as his address, date of birth, and information about his medical condition, with its insurer, Great West, in relation to his coverage under the workers' compensation policy. *See* SAC ¶ 234.

The ADA protects the privacy of employees with disabilities via prohibitions on the use of medical information as a condition of employment, including "a prohibition against using pre-

---

[19]   "Illinois Arbitrator Williams" is not a defendant in this case and would in any event be entitled to absolute immunity in performing a judicial function. *Coleman v. Dunlap*, 695 F.3d 650, 652 (7th Cir. 2012) ("Parties who, although not judges, engage in adjudication (such as private arbitrators or administrative tribunals) or execute the orders of judges (such as police officers executing a bench warrant, or a party executing a judicially-ordered sale) also enjoy absolute immunity.").

employment medical tests; a prohibition against the use of medical tests that lack job-relatedness and business necessity; and a prohibition against the use of tests which screen out (or tend to screen out) people with disabilities." *Karraker v. Rent-A-Ctr., Inc.*, 411 F.3d 831, 834 (7th Cir. 2005) (citing 42 U.S.C. § 12112(d)). The GLBA requires that financial institutions "respect and protect the security and confidentiality of [ ] customers' nonpublic personal information." 15 U.S.C. § 6801. Neither statute, however, bars an employer from providing information necessary to defend against a worker's compensation claim initiated by the employee. *Cf. E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1047-48 (10th Cir. 2011) (disclosure of information supplied voluntarily by an employee does not violate the ADA). That Johnson's former employer shared information with its insurer necessary to evaluate Johnson's workers' compensation claim under its insurance policy, however, is not an invasion of his privacy under the ADA or the GLBA.[20]

Illinois law prohibits the public disclosure of private facts: to prevail, a plaintiff "must show that private facts were made public and that the matter made public would be highly offensive to a reasonable person." *Karraker*, 411 F.3d at 838 (7th Cir. 2005) (citing *Wynne v. Loyola Univ. of Chicago,* 741 N.E.2d 669, 676-77 (Ill. App. Ct. 2000)). "Disclosure to persons with a 'natural and proper interest' in the information is not actionable." *Karraker*, 411 F.3d at 838 (quoting *Roehrborn v. Lambert,* 660 N.E.2d 180, 182-83 (Ill. App. Ct. 1995)). As the insurer providing Melton's workers' compensation coverage, Great West had a "natural and proper interest" in Johnson's basic identifying information and medical condition. *See, e.g.*, *Roehrborn*, 660 N.E.2d at 182-83 (no privacy violation in disclosing probationary officer's psychological

---

[20] The GLBA, moreover, does not provide for a private right of action, so Johnson would not be able to bring a claim under that Act even if he had pled sufficient facts to state a claim. *See, e.g.*, *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 893 F. Supp. 2d 75, 83 (D.D.C. 2012), *aff'd in part, rev'd in part on other grounds*, 787 F.3d 524 (D.C. Cir. 2015); *Barnett v. First Premier Bank,* No. 11–16504, 2012 WL 3041056, at *1 (9th Cir. 2012); *Dunmire v. Morgan Stanley DW, Inc.,* 475 F.3d 956, 960 (8th Cir. 2007).

and polygraph test results to administrator of police training institute because administrator had "a natural and proper interest in knowing the performance of potential applicants").

Accordingly, the motions to dismiss Johnson's invasion of privacy claim are granted.

## VII.    Count XII: Breach of Contract, Conversion, and Unjust Enrichment Claim

Johnson's breach of contract claim stems from an incident on June 12, 2013: although the facts alleged are not entirely clear, it seems that while Johnson was off-duty driving his tractor and trailer to his home in Gary, Indiana, defendant Williams called and "demanded" that he continue working or otherwise relinquish his vehicle. SAC ¶¶ 244, 248-250. Johnson apparently refused either option, and Williams called the Gary police to report that Johnson had stolen Melton's tractor. *See* SAC ¶¶ 249-50.

Johnson asserts that he had various agreements "in writing" with Melton, including that he would park his tractor and trailer at his home in Gary when he was off on "home-time" and that he would notify Melton of his home-time by electronically recording the dates in advance in Melton's computer system. SAC ¶¶ 241-42. He claims that by terminating him because he drove the tractor to his home when he was off-duty, Melton breached these written agreements. Melton's sole argument for dismissal of the breach of contract claim is that Johnson cannot state a claim "because [he] has not alleged the existence of a contract that was breached." Mem. in Supp. 11. Not so; Johnson states that he and Melton had an agreement that he could park the tractor at his home when he was off-duty and that Melton terminated him when he tried to do so. Taking all facts as true as the Court must on a motion to dismiss, Johnson has sufficiently alleged that the parties mutually assented to specific conditions as part of his employment and that Melton breached those agreements. The motion to dismiss the breach of contract claim is therefore denied.

The same cannot be said of the conversion claim; a claim for conversion requires "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 614 (7th Cir. 2013) (quoting *Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93, 96-97 (Ill. App. Ct. 1990). The property Johnson identifies as having been converted are his wages, *see* SAC ¶ 253; Illinois law, however, limits conversion actions for money to instances where the money is "capable of being described as a specific chattel . . . [A]n action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money." *Eggert v. Weisz*, 839 F.2d 1261, 1264 (7th Cir. 1988) (quoting *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985)). Johnson's claim is for an alleged obligation to pay wages he lost as a result of Melton's breach of contract and, as such, fails to state a claim for conversion. *See, e.g., Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) ("[T]he plaintiff's right to the money must be absolute[:] 'It must be shown that the money claimed, or its equivalent, *at all times* belonged to the plaintiff and that the defendant converted it to his own use.'" (emphasis added; citations omitted)).

Because a plaintiff may seek to recover lost wages based on an unjust enrichment theory, *see, e.g., Dempsey v. Nathan*, No. 14 CV 812, 2014 WL 4914466, at *9 (N.D. Ill. Sept. 30, 2014), the motion to dismiss the unjust enrichment claim is denied.[21]

---

[21] The Court notes that relief is only available under an unjust enrichment theory when there is no express contract governing the relationship between the parties. *See Karimi v. 401 N. Wabash Venture, LLC*, 952 N.E.2d 1278, 1284 (Ill. App. Ct. 2011) ("where a specific contract governs the relationship between the parties, the doctrine of unjust enrichment is inapplicable"). Although Johnson describes a contract governing at least some aspects of his employment relationship with Melton, he is permitted to plead alternative and/or inconsistent theories at this stage. *See* Fed. R. Civ. P. 8(d).

**VIII.    Counts XIII-XIV: Wrongful Termination and Retaliatory Discharge**

In his penultimate claim, Johnson invokes the Surface Transportation Assistance Act ("STAA"), which protects employees who report or are about to report violations of commercial motor vehicle safety and security standards from discharge, discipline, or discrimination. 49 U.S.C. § 31105(a). An employee who has suffered discharge, discipline, or discrimination in violation of § 31105(a) may file a complaint with the Secretary of Labor within 180 days of the alleged violation. 49 U.S.C. § 31105(b). If the Secretary of Labor has not issued a final decision within 210 days of the filing of the complaint, the employee may bring an original action in a district court. 49 U.S.C. § 31105(c).

Johnson states that he "brought the conduct of Defendant Melton to the attention of the U.S. Department of Labor" on July 14, 2014. SAC ¶ 255. By "conduct," Johnson explains that to mean that he was going to report to the Department of Labor that drivers were working off the clock, which put their health and safety at risk. SAC ¶ 256. Even assuming that bringing this conduct to the attention of the Department of Labor is the equivalent of filing a complaint with the Secretary of Labor (which is a necessary prerequisite to exhaust his administrative remedies), Johnson did so well past the 180-day period after the alleged violation; he was terminated on June 12, 2013 but did not report the incident to the Department of Labor until July 14, 2014, more than a year (397 days, to be specific) later. Accordingly, Johnson's STAA claim must be dismissed as untimely.

Johnson titles his final claim, "Retaliation in Violation of the Illinois Workers' Compensation Act." SAC Count XIV. He makes two contrasting arguments, that the defendants accused him of filing his workers compensation claim in retaliation for his termination, and that the Melton defendants retaliated against him by informing the Ohio arbitrator of Johnson's

complaints about safety conditions. *See* SAC ¶¶ 262-63. Putting aside the nonsensical argument that accusing Johnson of filing a retaliatory workers' compensation claim is somehow itself retaliatory, Johnson fails to state a claim for retaliatory discharge; he was terminated prior to the filing of any of his workers' compensation claims, so he could not have been terminated in retaliation for filing those claims. Nor does he allege that he planned to file a claim at the time he was terminated (he had not even seen a doctor at the time of his termination), so it is not plausible that Melton discharged him in anticipation of his filing of a workers' compensation claim. *See Jacobson v. Knepper & Moga, P.C.*, 706 N.E.2d 491, 493 (Ill. 1998) (Illinois law permits retaliatory discharge claims "when an employee is discharged for filing, or in anticipation of the filing of, a claim under the Workers' Compensation Act"). Johnson's claim for retaliation in violation of the IWCA is, therefore, dismissed.

## IX.    Motions for Sanctions

The Great West defendants have moved for sanctions against the plaintiff. They ask for reasonable attorney's fees and costs defending this action and for an injunction preventing Johnson from filing any additional civil actions against them without pre-certification that the claims are not frivolous. Johnson has filed four lawsuits in this district asserting claims against Great West and Melton,[22] has filed three appeals in this case alone [45, 77, 110], and moved to consolidate this case as an MDL with, apparently, a number of other unrelated cases against Great West. [136]. In addition, Johnson has filed numerous motions in this case that contravene the Court's orders.[23] Nevertheless, to this point Mr. Johnson has not had a final ruling on any of

---

[22] *See supra* Note 3.

[23] For example, in addition to his response to the Melton defendants' motion to dismiss (ECF No. 174), Johnson filed "objections" to Melton's motion to dismiss, which are directed only to the Lanham Act claim. Obj. Melton Mot. Dismiss, ECF No. 163. This is one of the myriad filings Johnson submitted, despite this Court's numerous admonishments to Johnson that

his claims against GW and at this juncture the Court is not inclined to impose sanctions on Johnson, a pro se litigant, for continuing his attempts to identify a viable legal theory against GW. Those efforts, however, have failed, and the Court now dismisses Johnson's claims against GW with prejudice. In the absence of a successful appeal of this dismissal, further efforts to assert such claims in this Court may warrant sanctions.

Mr. Johnson's motion for sanctions, however, is plainly frivolous and procedurally improper. The filings by the Great West defendants have been anything but sanctionable. What Johnson characterizes as "bad faith litigation conduct" on the part of the Great West defendants is simply the presentation of meritorious legal positions. Accordingly, Johnson's motion for sanctions is denied and Mr. Johnson is advised that the filing of a baseless motions for sanctions is itself sanctionable conduct.

* * * * *

For the foregoing reasons, the Great West defendants' motion to dismiss the Second Amended Complaint [117] is granted; the claims against the Great West defendants are dismissed with prejudice. The Melton defendants' motion to dismiss the Second Amended

---

he refrain from such extraneous filings. *See* Min. Entry June 22, 2015, ECF No. 52 ("The Court notes that Plaintiff has filed at least seven motions, all procedurally flawed, in the past two weeks. The repeated filing of improper motions diverts the Court's attention from matters that have been properly presented and briefed, such as the motion to dismiss that is pending in this case. Accordingly, absent an emergency need for relief, Plaintiff is directed not to file further pleadings until the Court has addressed the pending motion to dismiss. Further motions filed in violation of this order will be stricken without review."); Min. Entry Sept. 22, 2015, ECF No. 88 ("The Court has [ ] attempted to direct the plaintiff to stop filing collateral motions that divert the Court's resources and attention from addressing the claims and defenses in the case . . . ."); Min. Entry Jan. 6, 2016, ECF No. 143 ("To facilitate orderly resolution of the issues and claims in this case, no further motions are to be filed without leave of court unless emergency relief is requested.").

The Court notes as well that, despite prior admonishment (*see* ECF 22), Mr. Johnson continues to make inaccurate statements, such as "the Ohio Arbitrator has rejected all of the assertions made by Defendants at Arbitration," SAC ¶ 136, when in fact, the Ohio Administrator rejected Johnson's claim.

complaint [156] is granted in part and denied in part. The claims against defendants Peterson, Dargel, Williams, and Ragan are dismissed for lack of personal jurisdiction; that dismissal is final as to this case but without prejudice to the filing of claims in any other forum. The claims against Melton and the Plan are denied with prejudice, with the exception of the plaintiff's FLSA, breach of contract, and unjust enrichment claims against Melton, as to which the motion to dismiss is denied. The respective sanctions motions of the plaintiff [137] and the Great West defendants [132] are denied.

Dated: September 30, 2016

_____
John J. Tharp, Jr.
United States District Judge